UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| D'ANDRE HARRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:24-cv-497-HAB |
| | ) |
| GENERAL MOTORS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

Plaintiff, D'Andre Harris ("Harris"), sued Defendant, General Motors, alleging—among other things—discrimination under Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000. (ECF No. 1). General Motors filed its Answer (ECF No. 12) and minutes later moved to dismiss Harris' Title VI claim as well as the Title VII claims to the extent that it is based on ancestry or national origin. (ECF No. 13). Harris then moved to strike several of General Motors' responses to various paragraphs in its Answer as unresponsive. (ECF No. 19). Those paragraphs were the subject of the General Motors' Motion (ECF No. 13) with General Motors denying all allegations that were not the subject of its Motion to Dismiss. (ECF No. 12). Those motions (ECF Nos. 13, 19) are now fully briefed (ECF Nos. 14, 18, 20, 21, 23, 24) and ripe for ruling.

**I.   Facts and Procedural History**

In May 2013, General Motors hired Harris, an African-American, as a line member. (ECF No. 1, ⁋ 12). In 2015, he became a Supervisor before he was transferred to General Motors' Fort Wayne Assembly facility in 2018. (*Id.* ⁋⁋ 13-14). Harris then became a full-time Supervisor at

1

General Motors' Wentzville Assembly facility in 2020. (*Id.* ¶ 15). And in 2022, Harris was promoted to Chassis/Final Business Manager at its Fort Wayne Assembly facility. (*Id.* ¶ 16). From 2013 until January 2024, Harris "had never been in trouble with [General Motors.]" (*Id.* ¶ 17).

Then in January 2024, Harris received an email discussing an investigation into a sexual harassment complaint that another General Motors' employee made about him. (*Id.* ¶¶ 19, 21). Harris briefly spoke with General Motors' personnel and denied the allegations. (*Id.* ¶ 20). Without any further contact or information about the investigation, General Motors' terminated Harris on February 1, 2024. (*Id.* ¶¶ 20, 27-29).

From there, as required for a discrimination claim under Title VII, Harris took his grievances before the Equal Employment Opportunity Commission alleging "discrimination based on race." (*Id.* ¶ 10). Once he "received his Dismissal and Notice of Rights[,]" he sued General Motors in this forum. (*Id.*). Relevant here, Harris—in Count 2 of his Complaint—claims that General Motors violated Title VII because he believes his termination was motivated by "race, ancestry, and/or national origin[.]" (*Id.* ¶ 42). And in Count 3, he claims that General Motors violated Title VI for the same reason and because General Motors "is a recipient of federal assistance[.]" (*Id.* ¶¶ 7-8, 32, 45-48).

General Motors answered Harris' Complaint and moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count II to the extent that Harris asserts his termination was motivated by ancestry or national origin and Count III. In its Answer to Harris' Complaint, General Motors did not substantively respond to paragraphs 40 to 48 regarding Counts II and III but stated that it "denies any allegations in [paragraphs 40 to 48] of the Complaint which are not the subject of its Motion to Dismiss." (ECF No. 12 at ¶¶ 40-48). It also attached Harris' Charge of Discrimination ("Charge") with the EEOC as an exhibit to the Motion. (ECF No. 14-1).

Harris then moved to strike General Motors' answers to paragraphs 40 to 48 as insufficient as well as requesting that General Motors' Motion be treated as a motion for judgment on the pleadings or a motion for summary judgment.

## II. Discussion

### a. Motion to Strike

Before reaching the merits of General Motors' Motion to Dismiss (ECF No. 13), the Court must tackle several procedural issues raised in Harris' Motion to Strike (ECF No. 19). The answer to those issues will ultimately inform what standard to consider General Motors' Motion under. Harris first argues—both in his Motion to Strike and his Response to General Motors' Motion—that the Motion should be treated as one for summary judgment as the EEOC Charge falls outside the pleadings. In the alternative, he argues that the Motion cannot fall under Rule 12(b)(6) because General Motors filed its answer before filing its motion. Due to this timing issue, he believes the Motion should be treated, at minimum, as a motion for judgment on the pleadings under Rule 12(c). Lastly, he argues that because the motion should be one for summary judgment or judgment on the pleadings, General Motors' answers to paragraphs 40-48 should be stricken and considered admitted.

Starting with the first issue, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Harris did not attach the Charge to his Complaint, but General Motors argues that the Court can take judicial notice of the Charge without converting the motion to one for summary judgment. And indeed, "the Court may…take judicial notice of documents in the public record without converting a motion…into a motion for summary judgment." *Moses v. U.S. Steel Corp.*, 2012 WL 1066769, at

3

*1 (N.D. Ind. Mar. 28, 2012) (citing *Pugh v. Trib. Co.,* 521 F.3d 686, 691 (7th Cir.2008)); *See also Milwaukee Police Assoc. v. Flynn,* 863 F.3d 636, 640 (7th Cir. 2017) (in a Rule 12(c) analysis, the court may take judicial notice of matters of public record). And a Charge of Discrimination is considered a matter within the public record in Title VII cases such as this. *Ocholi v. Skywest Airlines*, 2012 WL 256125, at *1 (E.D. Wis. Jan. 27, 2012) (citing *Cont'l Cas. Co. v. Am. Nat'l Ins.,* 417 F.3d 727, 731 n. 3 (7th Cir.2005)). The Court thus takes judicial notice of the Charge without converting General Motors' motion to a motion for summary judgment.

The next issue is whether the motion should be considered a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c). As Harris points out, "a motion to dismiss under Rule 12(b)(6) must be filed before filing an answer to the Complaint[.]" *Martinez v. Regency Janitorial Servs. Inc.*, 2011 WL 4374458, at *1 (E.D. Wis. Sept. 19, 2011) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). But the Seventh Circuit has also held that "after the close of the pleadings a defendant may raise various Rule 12(b) defenses in a motion for judgment on the pleadings under Rule 12(c)." *Id.* And under such circumstances, "the court reviews the motion using the same standards applicable to the corresponding Rule 12(b) motion." *Id.* The Court, in its discretion, may therefore convert General Motors' Motion into a motion for judgment on the pleadings. *See Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986). The Court exercises that discretion here.

Lastly, Harris requests that this Court deem admitted his responses to paragraphs 40 to 48 of his Complaint because they are unresponsive. Rule 12(f) allows this Court to strike an insufficient defense from a pleading. Fed. R. Civ. P. 12(f). And Rule 8(b) "requires a defendant to

plead one of three alternatives in response to the allegations in a complaint: (1) an admission, (2) a denial, or (3) an averment that the party lacks knowledge or information sufficient to form a belief as to the truth of the averment." *N. Indiana Metals v. Iowa Exp., Inc.,* 2008 WL 2756330, at *2 (N.D. Ind. July 10, 2008) (citing Fed. R. Civ. P. 8(a)). General Motors' Answer (ECF No. 12) did deny those allegations but with a caveat: "Defendant denies any allegations in [paragraphs 40 to 48] of the Complaint which are not the subject of its Motion to Dismiss." After Harris raised the issue, General Motors filed an Amended Answer (ECF No. 22) under Fed. R. Civ. P. 15(a)(1)(B) which did provide sufficient answers: "To the extent a response is required, Defendant denies the allegations in [paragraphs 40 to 48] of the Complaint."

Under Fed. R. Civ. P. 15(a)(1)(B), a party is allowed to amend a pleading once as a matter of course within 21 days "after service of a motion under Rule 12(b), (e), or (f)." *See Taylor v. BW Wings Mgmt., LLC*, 2022 WL 3975145, at *1-2 (N.D. Ind. Aug. 30, 2022). Within 21 days of Harris' motion under Rule 12(f), General Motors filed its Amended Answer denying all allegations in paragraphs 40 to 48 without any caveat. And Harris provides no argument that allowing the Amended Answer is improper. In light of the Amended Answer, the Court DENIES Harris' Motion to Strike and Deem Insufficient Answers as Admitted (ECF No. 19) as MOOT.

### b. Legal Standard

As stated, although the Court treats General Motors' Motion (ECF No. 13) as one for judgment on the pleadings, a Rule 12(c) and a Rule 12(b)(6) motion are analyzed under the same standard. *See Alioto*, 651 F3d at 718. Rule 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

5

556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When analyzing a motion to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000).

That said, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Bielanski v. Cty. Of Kane,* 550 F.3d 632 (7th Cir. 2008). And "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

### c. Motion for Judgment on the Pleadings

Having determined the proper standard under which to analyze General Motors' Motion, the Court turns to the merits. General Motors first argues that Harris' Title VII claim (Count II) should be dismissed to the extent that he alleges that his termination was based on ancestry or national origin because Harris failed to exhaust his administrative remedies for such claims. It relies on Harris' Charge filed with the EEOC which only alleges "discrimination based on age [and] race." (ECF No. 14-1). General Motors then argues that Harris' Title VI claim (Count III) must be dismissed for two reasons. First, it attacks the claims' sufficiency by arguing that Harris does not plead sufficient facts to establish a claim under Title VI. And it argues, that even if the factual basis were sufficient, the claim is barred by the relevant statute of limitations. The Court addresses each of General Motors' arguments in turn below.

### i. Title VII (Count II)

Title VII makes it unlawful for an employer "discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color,…or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Before bringing a Title VII claim, a plaintiff must first exhaust h[er] administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). And "the scope of the complaints brought before the [EEOC] limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099-1100 (7th Cir. 2013). The purpose of the exhaustion requirement is two-fold: it gives the EEOC and the employer an opportunity to settle the dispute, and it puts the employer on notice of any charges against it. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Harris' Charge (ECF No. 14-1) only asserts "DISCRIMINATION BASED ON Age [and] Race[.]" And he does not mention ancestry or national origin in the section where he expands on the conduct giving rise to his claim; he only asserts discrimination based on race. Harris merely stated that he is "African American[,]" mentioning that his supervisor and General Motors' human resources personnel were "Caucasian." General Motors thus argues that any claim based on ancestry or national origin must be dismissed because the Charge makes no mention of those claims. It is correct. Nothing in the Charge suggests that Harris was discriminated based on his ancestry or national origin. Nor could such claims be "reasonably be expected to grow out of the administrative charge[]" in this case. *Reynolds*, 737 F.3d at 1099-1100. Dismissal of Harris' Title VII claims based on ancestry or national is thus warranted. *See Davis v. Brennan,* 2016 WL 5476251, at *1 (N.D. Ill. Sept. 29, 2016) (granting summary judgment where "[a] review of Plaintiff's administrative charge shows that although she complained about alleged discrimination,

7

she never complained about discrimination based upon national origin. Nor do her allegations suggest national origin discrimination or indicate that such a claim might grow out of such charges.").

Rather than address the merits of General Motors' argument, Harris argues that exhaustion is an affirmative defense, and he has "no obligation to allege facts negating an affirmative defense" on a motion under Rule 12(b)(6). (ECF No. 18 at 5 (citing *Mosely v. Bd. of Educ.*, 434 F.3d 527, 532-33 (7th Cir. 2006)). Apart from courts in the Seventh Circuit routinely addressing exhaustion at the dismissal stage[1], *Mosely* does not support Harris' position because the Court granted his request that the motion be considered one for judgment on the pleadings under Rule 12(c):

> "A failure to exhaust is normally considered to be an affirmative defense, *see, e.g., Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002), and we see no reason to treat it differently here. **That means that the earliest possible time to consider it would normally be after the answer has been filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings.** Parties and courts occasionally take short-cuts and present certain arguments through a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), if the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim. Mosely's case is not a candidate for that treatment, however. She had no obligation to allege facts negating an affirmative defense in her complaint, *see Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)).

*Mosely,* 434 F.3d at 533 (emphasis added). Here, the distinction between a motion made under Rule 12(c) versus Rule 12(b)(6) is of consequence. Exhaustion is properly raised on a Rule 12(c) motion for judgment on the pleadings. As repeatedly stated, the Court treats General Motors'

---

[1]*Williams v. Potter*, 2008 WL 4449549, at *2 (N.D. Ind. Sept. 25, 2008) ("Because 'the failure to exhaust administrative remedies is not a jurisdictional issue . . . the Court will analyze this motion under Rule 12(b)(6)'"); *Morris v. Hertz Corp.*, 2008 WL 2954988 (S.D. Ind. July 24, 2008) (dismissing national origin claim for failure to exhaust administrative remedies under Rule 12(b)(6)); *Perry v. Scaible*, 2008 WL 2324641, at *1 (E.D. Wis. June 5, 2008) ("[T]he Seventh Circuit Court of Appeals treats failure to exhaust administrative remedies as properly raised under Rule 12(b)(6)[.]"); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089-1090 (7th Cir. 2008) (affirming the district court's dismissal under Rule 12(b)(6) for failure to exhaust administrative remedies); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004-06 (7th Cir. 2019) (affirming a Rule 12(b)(6) dismissal based on failure to exhaust because the discrimination claim that was not reasonably related to the plaintiff's alleged EEOC charges).

Motion as such. Accordingly, Harris argument that he need not address affirmative defenses on a motion under Rule 12(b)(6) is misplaced. The Charge simply fails to mention ancestry or national origin, and the Court grants dismissal of Count II to the extent that Harris asserts he was discriminated on those bases.

### ii. Title VI (Count III)

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. Congress enacted Title VI with dual aims: to "avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286(1998) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)).

A claim of employment discrimination under Title VI has three elements: "(1) [the defendant] is a recipient of federal funds; (2) the federal funds are used to provide employment; and (3) [the defendant] discriminated against [the plaintiff] in his employment on the basis of his [race]." *Crow Dog v. City of Indianapolis*, 2005 WL 643363, at *5 (S.D. Ind. Mar. 18, 2005) (citing *Ahern v. Board of Educ. of Chicago*, 133 F.3d 975, 976-78 (7th Cir. 1998)). The Seventh Circuit emphasizes that the primary purpose of the federal aid at issue must be to provide employment. *See Doe ex rel. Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 419 n.12 (7th Cir. 1986) ("Although section 2000d-3 expressly addresses only agency action, courts have uniformly held that, even in private actions under Title VI, the primary objective of the federal grant must be to provide employment."), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996).

9

General Motors first argues that Harris' Title VI claim must fail because he fails to allege that the primary objective of the federal funding General Motors receives is to provide employment. Indeed, the Complaint contains sparce allegations regarding how General Motors used the federal funds it received. The Complaint states that General Motors received "CARES Act federal assistance…in the form of wages and other compensation." (ECF No. 1, ¶ 8). And Harris details millions of dollars that General Motors received from various sectors of the federal government, including "$476.4 million from the Department of Health and Human Services-Covid-19[.]" (*Id.* ¶ 32). But Harris does not state that the primary objective of those grants was to provide employment. Nowhere does Harris state what the primary purpose of any federal funding was. That alone is fatal to his Title VI claim, but he will be granted leave to cure that deficiency.

The standard in the Seventh Circuit is this: "the plaintiff *must allege* that, for institutions receiving federal funds, '(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid.'" *Hefferman v. Illinois Cmty. Coll. Dist. No. 508*, 2000 WL 631309, at *3 (N.D. Ill. May 16, 2000) (citing *Ahern*, 133 F.3d at 978) (emphasis added). Consistent with that standard, Title VI itself provides no relief in the employment context "except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. Congress created such a threshold "out of 'concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII.'" *Smith v. Evans*, 2019 WL 6327423, at *6 (N.D. Ill. Nov. 25, 2019) (quoting *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627 n.6 (1987)).

That concern belies the Court's decision here as a lesser pleading standard would open the Title VI floodgates. *See Fields v. Am. Airlines, Inc.*, 2021 WL 4306021 (E.D. Pa. Sept. 22, 2021)

10

("This requirement reflects the fact that 'Congress did not intend Title VI to be the primary federal vehicle to prohibit employment discrimination.' Department of Justice, Title VI Legal Manual (Updated) § X.A (Apr. 22, 2021).") In the employment discrimination context, it would subject every employer who receives federal funding—no matter the purpose—to potential litigation under Title VI. And in this Court's research, every case that has survived dismissal on this issue has plausibly alleged that the primary purpose of the federal aid at issue was to provide employment. *See, e.g.*, *Hefferman,* 2000 WL 631309, at *3 (alleging the defendant "receives federal funds, one of the primary purposes of which is the creation of employment."); *Allen v. Bd. of Trs. Rock Valley Coll.*, 2021 WL 4034067, at *8 (N.D. Ill. Sept. 3, 2021) (alleging the defendant "accepts and receives funding ... from the federal government for grants, scholarships, federal student loans, *and employment* which is a primary objective of the federal aid."). Harris' Complaint contains no such allegation.

His arguments to the contrary are unconvincing. Harris relies on *Junhao Su v. E. Ill. Univ.*, 565 F. App'x 520 (7th Cir. 2014), for the notion that "there is no heightened pleading requirement in Rule 8 for discrimination cases[.]" *Id.* at 522 ("Thus, to the extent that the district court based its order on any additional pleading requirements for Title VI cases, it erred."). But *Junhao Su* dealt with discrimination in admissions to a university, not employment. Although brought under the same statute, that case dealt with an entirely different claim with different elements. It thus provides little, if any, support in the present context.

Harris also implores the Court to "use [its] experience and knowledge to connect the reasonable plausibility that COVID-19 funding is funding under the CARES Act enacted during the COVID-19 pandemic to help businesses maintain payroll and other business related expenses." (ECF No. 18 at 7). While perhaps some of that funding may have related to employment, Harris

11

does not state it in his Complaint. Nor will the Court speculate as $500 million could be used for numerous other purposes. And that statement is telling; Harris does not even say that the primary objective of the COVID-19 funding was to provide employment in his Response to the Motion. (*Id.*). He merely urges the Court to connect that funding to employment and says nothing about the funds' primary objective. The Court thus finds his Complaint deficient in this regard.

General Motors also argues that Harris' Title VI claims should be dismissed because Harris fails to plead that he was an actual beneficiary of the federal funding. It cites *Crowdog,* 2005 WL 643363, at *5, in support of its position. But that case did not so much as comment on this precise issue. Nor has the Court unearthed any case law to support such a position. Rather, to bring a Title VI claim, "the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Sifuna v. Accreditation Council of Pharmacy Educ.*, 2017 WL 5891224, at *7 (N.D. Ill. Nov. 28, 2017) (quoting *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980)). And Harris pleads as much in his Complaint. (ECF No. 1, ¶ 8 ("Plaintiff was intended to be a beneficiary of the CARES act federal assistance.")). The Court thus does not find Harris' Complaint deficient on that basis.

Lastly, General Motors contends that the Title VI claims should be dismissed based on the applicable statute of limitations. In the Seventh Circuit, the statute of limitations in a Title VI case is "limitations period that a state has specified for personal injury claims." *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1099 (7th Cir. 2021). In Indiana, that period is two years after the cause of action accrues. Ind. Code § 34-11-2-4; *See also Mojsoski v. Indiana Wesleyan Univ.*, 2022 WL 17338426, at *4 (N.D. Ind. Nov. 30, 2022). To that end, General Motors argues that Harris' Title VI claim is time-barred because "there are no allegations as to when [General Motors] received the alleged federal funding." (ECF No. 21 at 9).

Harris responds that "nothing in [his] Complaint would even suggest that [his] claims are time-barred." (ECF No. 18). Although Harris spent little ink developing this argument, he has a point. "When a claim is brought in federal court, '[it] accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action.'" *Mojsoski*, 2022 WL 17338426, at *4 (collecting cases). With that in mind, General Motors argument misses the mark. The statute of limitations started to run at the time of the alleged injury which was Harris' termination on February 1, 2024. Harris brought his Title VI claim just seven months after and well before the (still ticking) statute of limitations on his claim ran. His claim is thus timely.

Alternative to dismissal, General Motors asks this Court to "hold Harris to a higher standard and instruct Harris to plead a date specific to provide Defendant notice of when it received the alleged federal funding and paid Harris wages derived from the alleged federal funding." (ECF No. 21 at 9). General Motors provides no authority in support of such a pleading standard in Title VI employment discrimination cases and the Court has found none on its own research. Instead, they suggest that a lesser standard "would defy public policy." (*Id.* ("Harris wants to support a Title VI claim based on a non-timebound receipt of federal aid. Accepting this theory would render any entity who has ever received federal aid for the purpose of employment subject to Title VI, no matter when they received or used the aid."). Although perhaps a valid concern, Title VI was also designed to "avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser*, 524 U.S. at 286. With that in mind, the Court does not believe the onus is on the plaintiff to determine when the defendant received federal funds in a Title VI discrimination case. And this Court will not be the first to impose such a requirement. Moreover, that information seems much more accessible to the party receiving the federal funds rather than the plaintiff. Discovery will shed light on this issue and

13

summary judgment may tell a different tale, but the Court will not impose a more demanding pleading burden on Harris.

In this case, all Harris must allege is that (1) General Motors is a recipient of federal funds; (2) the federal funds are used primarily to provide employment; and (3) General Motors discriminated against him in his employment based on his race. *See Crow Dog*, 2005 WL 643363, at *5; *Ahern*, 133 F.3d at 976-78. Although Harris falls short on the second element—that the funds' primary purpose is to provide employment—he otherwise checks all the boxes for an employment discrimination claim under Title VI.

Harris, in his Response, requests leave to amend his Complaint to cure the above deficiency raised in General Motors' Motion. (ECF No. 18). Federal Rule of Civil Procedure 15(a) provides that, when a party seeks leave to amend a pleading, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, if the underlying facts or circumstances relied upon by a plaintiff are potentially a proper subject of relief, the party should be afforded an opportunity to test the claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). That said, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

As for Harris' Title VI claim, the Court finds that despite Harris' deficient pleading, the facts asserted are potentially a proper subject of relief.[2] If he can allege that the primary objective of the federal funding is to provide employment, his claim will survive. Yet the same cannot be said for his Title VII claim to the extent that Harris alleges discrimination based on ancestry or

---

[2] General Motors did not address Harris' request for leave to amend his Complaint in its Reply brief. (ECF No. 21).

national origin. Such claims clearly fall outside the scope of his Charge with the EEOC, and thus will be dismissed with prejudice because they are futile.

### III.    Conclusion

For these reasons, the Court DENIES Harris' Motion to Strike as MOOT (ECF No. 19); CONSTRUES General Motors' Motion (ECF No. 13) as a Motion for Judgment on the Pleadings; and GRANTS General Motors' Motion (ECF No. 13). Harris' Title VII claim is DISMISSED WITH PREJUDICE to the extent that he asserts claims of discrimination based on ancestry or national origin. Harris' Title VI claims are DISMISSED WITHOUT PREJUDICE. The Court GRANTS Harris leave to replead by filing an amended complaint on his Title VI claim within 14 days if he can sufficiently allege that he meets the elements of that claim. Failure to do so shall result in dismissal for failure to prosecute his claim. *See* Fed. R. Civ. P. 41(b).

SO ORDERED July 3, 2025.

                                              s/ *Holly A. Brady*
                                             CHIEF JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT